UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| DR. FREDRICK WILLIAM "ERIC" CUBIN III,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>MARK GORDON, Governor of Wyoming,<br><br>    Defendant-Appellee. | Case No. 25-8021<br>(D.C. Case No. 1:24-cv-164-SWS)<br>(D. Wyo.) |

**APPELLEE-DEFENDANT'S OPPOSITION TO AMERICA'S FRONTLINE DOCTORS AND DR. SIMONE, M.D., J.D.'S MOTION FOR LEAVE TO FILE *Amici Curiae***

Pursuant to Rule 29, Federal Rules of Appellate Procedure, Defendant-Appellee Mark Gordon, in his individual and official capacities, hereby opposes American Frontline Doctors and Dr. Simone M.D.'s (AFLDS) motion for leave to file amici curiae. In support he states as follows:

1.    This case presents an appeal from the Order Granting Defendant's Motion for Judgment on the Pleadings entered by the United States District Court for the District of Wyoming on April 14, 2025. (Addendum, 1-30).

2.    Dr. Frederick Cubin was a member of the Wyoming Board of Medicine (Board) from March of 2023 to April 22, 2024. (App. Vol. I at 11, ¶ 8). Through the

Medical Practice Act, the Board is authorized to regulate licensure, investigate and take disciplinary actions against licensees, and adopt rules to implement the Act. Wyo. Stat. Ann. § 33-26-202(b).

    3.    On February 28, 2024, while serving as a member of the Board, Dr. Cubin sent an email to the entire Wyoming House of Representatives (House). (App. Vol. I at 016, ¶ 37; 30-31). Dr. Cubin asserted in his Complaint, that the genesis of the email was a private dispute between Dr. Cubin and the Wyoming Medical Society (Society), a voluntary physician's organization. (App. Vol. I at 15-16, ¶¶ 28-37). The Society opposed Senate File 0099 (SF0099), a bill prohibiting certain gender-affirming procedures for minors in Wyoming. (App. Vol. I, at 15, ¶27). Dr. Cubin criticized the Society for opposing the bill and demanded that the organization change its position to a more neutral stance. (App. Vol. I, at 15-16, ¶¶ 30-36). After failing to receive a satisfactory response from the Society, Dr. Cubin sent his email to the House. (App. Vol. I at 16, ¶ 37).

    4.    Significantly, Dr. Cubin's email to the House was not a statement of how he felt the bill would impact his practice or a statement of his medical expertise in the field of child pediatrics. (App. Vol. I at 30-31). The first line of his email acknowledges that he is writing "for a couple of reasons." (App. Vol. I at 30). After the introductory sentences, Dr. Cubin's email's first point is his frustrations with the leadership of the Society. (*Id.*). Dr. Cubin expressed his sadness that the "Wyoming

Medical Society has been essentially hijacked by the far left." (*Id*.). He stated that, "they have adopted and embraced 'woke' positions that are not congruent with the thoughts and opinions of the majority of their physician members." (*Id*.). Dr. Cubin stated that "[i]n their opposition to Chloe's Law, the WMS has partnered with Dr. Sanderson, a pediatrician from Sheridan, who is the President of the WyAAP [the Wyoming chapter of the American Academy of Pediatricians]." (*Id*.). Dr. Cubin accused Dr. Sanderson of suppressing the position of another pediatrician organization. (*Id*.). Dr. Cubin then provided what he believed was relevant information from the American College of Pediatricians, taking an opposite view from the position of the Society. (*Id*.).

5. The bill passed the Wyoming legislature and Governor Gordon signed the bill into law. (App. Vol. I at 17, ¶ 8). There is no allegation in Dr. Cubin's Complaint that Governor Gordon opposed the bill or specifically challenged Dr. Cubin's support of the merits of the bill.

6. On April 22, 2024, Governor Gordon sent a letter to Dr. Cubin removing him from the Board. (App. Vol. I, at 33). Governor Gordon explained that Dr. Cubin's email to the House "could give doctors, who are licensed by the Board of Medicine, a reason to be concerned that you might use your position to advocate for a particular position when considering matters that should be considered absent agenda or prejudice." (App. Vol. I at 32). Governor Gordon noted that "Medical

3

professionals should be confident that their licensure, which is their livelihood, will be handled professionally and clinically examined on merits alone." (*Id.*). He also explained that "[e]ven the appearance of bias can be disquieting as well as erode confidence in the Board's presumed impartiality." (*Id.*).

7. In granting Governor Gordon's motion for judgment on the pleadings the District Court found that Dr. Cubin failed to allege viable First Amendment violations against Governor Gordon under the *Garcetti/Pickering* test, which is the test applied in the government employment context. (Add. at 29).

8. Specifically, the issue in this case whether Dr. Cubin's speech was on a matter of public or private concerns and whether Governor Gordon's state interest in ensuring licensing board members operate without even the appearance of bias or prejudice outweighs Dr. Cubin's free speech rights.

9. These issues require a review of Wyoming law and the content of Dr. Cubin's speech, especially as it related to the Wyoming Medical Society. The validity of Dr. Cubin's medical positions related to SF0099 is not at issue in this matter.

10. The proposed amici curiae brief asserts, without any discussion of the specific facts or communications in this case, that Dr. Cubin's termination is unconstitutional "viewpoint discrimination" and that his termination for the "appearance of impropriety or interfering with WMS functioning appeared to be purely pretextual." (Proposed Amici at 12-13).

11. The amici curie argues that the great public interest is to guard against the dangers of medical censorship. (Proposed Amici at 9). To this end, the proposed amici curie compares this sort of censorship to Nazi Germany, amid other comparisons. (Proposed Amici at 10).

12. The cases cited by AFLDS are all primarily related to state regulation on the practice of medicine or other state regulations restricting medical speech in some form. See *National Institute for Family and Life Advocates, et al. v. James*, 2024 WL 3904870, August 22, 2024 (W.D.N.Y. 2024); *National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ("NIFLA"). These cases are very different from the interests involved in this case, that are governed by the *Garcetti/Pickering* balancing test to determine whether the State's legitimate interests outweighed Dr. Cubin's free speech interests. Additionally, this case is factually distinct because Dr. Cubin sat as a member of state licensing board with authority to regulate licensure, investigate and take disciplinary actions against licensees, and adopt rules to implement the Wyoming Medical Practice Act.

13. The amici curie then asserts, without any support, that by removing Dr. Cubin from the Board, the Governor exhibited "'viewpoint discrimination' in favor of supporting children who are 'undergoing gender transition.'" (Proposed Amici at 13). Without any context, the brief asserts: "That this is fully binding upon Defendant-Appellee is beyond debate, thus creating Respondents' liability under 42

5

U.S.C. §1983." (*Id*. at 14). The remainder of the brief discusses the dangers of gender reassignment and the importance of laws such as SF0099.

14. However, the merits of Dr. Cubin's support for SF0099 have never been questioned in this proceeding. They were not argued by Governor Gordon in the Rule 12(c) motion, nor were they relied on by the district court in its determination of this matter.

15. While it does not appear that this Court has ever specifically created a standard for allowing amici curie, this Court has noted that "[f]ederal courts have discretion in allowing participation as amicus curiae." *New Mexico Oncology & Hematology Consultants, Ltd. v. Presbyterian Healthcare Servs.*, 994 F.3d 1166, 1175 (10th Cir. 2021) (citation omitted). In that case, this Court appeared to rely on the requirements of Rule 29 of the Federal Rules of Appellate Procedure that a motion for leave to file must be accompanied by a brief, must state the movant's interest, the reasons why an amicus brief is desirable, and why the matters asserted are relevant to the disposition of case. F.R.A.P. 29(a)(4).

16. In this case, AFLDS's motion does not clearly articulate why the brief is desirable or why the matters asserted are relevant to the disposition of the case. As explained above, AFLDS's brief is focused on matters that are not dispute in this appeal and their briefing is not relevant to the disposition of this case.

WHEREFORE, Defendant-Appellee respectfully requests that the Court deny the AFLDS's motion to file an amici curie in this case.

DATED this 20th day of June, 2025.

*/s/Brandi L. Monger*
Brandi L. Monger, Bar No. 6-3731
Deputy Attorney General
Timothy W. Miller, Bar No. 5-2704
Senior Assistant Attorney General
Wyoming Attorney General's Office
109 State Capitol
Cheyenne, Wyoming 82002
(307) 777-5820
(307) 777-7888
(307) 777-8920 Facsimile
tim.miller@wyo.gov
brandi.monger@wyo.gov

Attorneys for Appellee

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

1. This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 1595 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word 2013 in size 14 font, Times New Roman.

Respectfully submitted this 20th day of June, 2025.

*/s/Brandi L. Monger*
Brandi L. Monger

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing:

1. This motion complies with 10th Cir. R. 25.5 because all required redactions have been made.

2. Every document submitted in digital form or scanned PDF format is an exact copy of the hard copies of the document filed with the Clerk.

3. This Motion complies with the policies and procedures for filing via ECF. All electronic submissions were scanned for viruses with the most recent version of CrowdStrike Antivirus program, which runs at all times on all Wyoming state systems, and, according to the program, are free of viruses.

Respectfully submitted this 20th day of June, 2025.

*/s/Brandi L. Monger*
Brandi L. Monger

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of June, 2025, the foregoing **American Frontline Doctors and Dr. Simone M.D.'s motion for leave to file amici curiae** was served by E-Filing via the Tenth Circuit Court of Appeals' Electronic Case Filing System on the following individuals as indicated:

| | |
|---|---|
| Bridget F. Conlan<br>Emily Rae<br>Liberty Justice Center<br>7500 Rialto Blvd<br>Suite 1-250<br>Austin, TX 78735 | [✓] CM/ECF |
| D. Stephen Melchior<br>Melchior Law Firm<br>2010 Warren Avenue<br>Cheyenne, WY 82001 | [✓] CM/ECF |
| Dr. Simone Gold, M.D, J.D<br>David A. Dalia<br>700 Camp Street<br>New Orleans, LA 70130 | [✓] CM/ECF |

*/s/Miranda Muzquiz*
Miranda Muzquiz, Paralegal
Office of the Wyoming Attorney General