# UNITED STATES DISTRICT COURT
# DISTRICT OF WYOMING



Margaret Botkins
Clerk of Court

Jon Bastian
Chief Deputy Clerk

April 18, 2025

Chris Wolpert, Clerk of Court
United States Court of Appeals for the 10th Circuit
Byron R. White Courthouse
1823 Stout Street
Denver, CO  80257

Re:   ***Cubin v. Wyoming Governor et al***
District Court Case Number:  24-cv-00164-SWS
Notice of Appeal Filed:      04/18/2025
Filing fee not paid.

Dear Mr. Wolpert:

Attached are documents filed in connection with the Notice of Appeal in this case, which will constitute the preliminary record on appeal:

- Copy of District Court docket entries

- Copy of Notice of Appeal

- Copy of the District Court's final judgment or order(s) from which the appeal is taken, as follows:

  [63] Order and [64] Judgment.

If anything further is required, please let me know.

Sincerely,

Margaret Botkins
Clerk of Court

Attachment(s)

By:_____
Tiffany Dyer

2120 Capitol Avenue, Room 2131 ♦ Cheyenne, WY 82001        111 South Wolcott, Suite 121 ♦ Casper, WY 82601
(307) 433-2120 ♦ Fax (307) 433-2152                        (307) 232-2620 ♦ Fax (307) 237-0014
www.wyd.uscourts.gov

DISCSTAY,APPEAL,TERMED

# U.S. District Court
## District of Wyoming (Casper)
## CIVIL DOCKET FOR CASE #: <u>1:24−cv−00164−SWS</u>
### *Internal Use Only*

| | |
|---|---|
| Cubin v. Wyoming Governor et al | Date Filed: 08/29/2024 |
| Assigned to: Honorable Scott W Skavdahl | Date Terminated: 04/14/2025 |
| Referred to: US Magistrate Judge Scott P Klosterman | Jury Demand: Both |
| Case in other court:  USCA 10th Circuit, 24−08084 | Nature of Suit: 440 Civil Rights: Other |
| Cause: 42:1983 Civil Rights Act | Jurisdiction: Federal Question |

**<u>Plaintiff</u>**

| | | |
|---|---|---|
| **Dr Frederick William Cubin, III** | represented by | **Buck Dougherty** |
| *also known as* | | Liberty Justice Center |
| Eric Cubin | | 7500 Rialto Blvd. |
| | | Suite 1−250 |
| | | Austin, TX 78735 |
| | | 512−481−4400 |
| | | Email: bdougherty@libertyjusticecenter.org |
| | | *TERMINATED: 02/25/2025* |
| | | *LEAD ATTORNEY* |
| | | *PRO HAC VICE* |
| | | |
| | | **Bridget Conlan** |
| | | LIBERTY JUSTICE CENTER |
| | | 7500 Rialto Blvd. |
| | | Suite 1−250 |
| | | Austin, TX 78735 |
| | | 630−267−9913 |
| | | Email: bconlan@libertyjusticecenter.org |
| | | *ATTORNEY TO BE NOTICED* |
| | | |
| | | **D Stephen Melchior** |
| | | MELCHIOR LAW FIRM |
| | | 2010 Warren Avenue |
| | | Cheyenne, WY 82001 |
| | | 307/637−2323 |
| | | Fax: 307/637−2313 |
| | | Email: steve@melchlaw.com |
| | | *ATTORNEY TO BE NOTICED* |

V.

**<u>Defendant</u>**

| | | |
|---|---|---|
| **Wyoming Governor** | represented by | **Brandi Lee Monger** |
| *in his official capacity* | | WYOMING ATTORNEY GENERAL |
| *also known as* | | Civil Division |
| Mark Gordon | | 2424 Pioneer Avenue |

3rd Floor
Cheyenne, WY 82002
307–777–7888
Email: brandi.monger@wyo.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Timothy W Miller**
Wyoming Attorney General's Office
Tort Litigation
109 State Capitol
Cheyenne, WY 82002
307–777–5820
Fax: 307–777–3858
Email: tim.miller@wyo.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Mark Gordon**                                    represented by  **Brandi Lee Monger**
*individually*                                                  (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

                                                                **Timothy W Miller**
                                                                (See above for address)
                                                                *LEAD ATTORNEY*
                                                                *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/29/2024 | 1 | COMPLAINT against All Defendants with Jury Demand. (Filing fee $ 405,Receipt Number AWYDC–2487830) Attorney D Stephen Melchior added to party Frederick William Cubin, III(pty:pla), filed by Frederick William Cubin, III. (Attachments: # 1 Exhibit 1. Dr. Cubin E–Mail to House, # 2 Exhibit 2. Gov. Gordon Letter to Dr. Cubin, # 3 Exhibit 3. Gov. Acknowledgment of Dr. Cubin Resignation, # 4 Proposed Summons, # 5 Civil Cover Sheet) (Melchior, D) (Attachment 4 replaced with flattened pdf on 8/29/2024) (Court Staff, smxb). (Main Document 1, Attachment 1, 2 & 3 replaced on 10/29/2024 to remove live links) (Court Staff, scat). (Flattened Attachment 5 replaced on 11/7/2024) (Court Staff, scat). (Entered: 08/29/2024) |
| 08/29/2024 | 2 | Notice of Judge Assignment and Consent to Proceed before a Magistrate Judge. The case has been assigned to the Honorable Scott W. Skavdahl and the Honorable Mark L. Carman as referral judge. (Court Staff, smxb) (Entered: 08/29/2024) |
| 08/29/2024 | 3 | Summons Issued (Court Staff, smxb) (Entered: 08/29/2024) |
| 09/05/2024 | 4 | SUMMONS Returned Executed by Frederick William Cubin, III on 8/30/2024 to Defendants Wyoming Governor and Mark Gordon. Answer due 9/20/2024 (Melchior, D) Modified text on 9/11/2024 (Court Staff, semt). (Entered: 09/05/2024) |
| 09/18/2024 | 5 | |

| | | (TEXT−ONLY) ORDER REASSIGNING REFERRAL JUDGE. Case reassigned to Chief US Magistrate Judge Scott P Klosterman for all further non−dispositive matters; US Magistrate Judge Mark L Carman no longer assigned to case by the Honorable Scott W Skavdahl. (Court Staff, sjlg) (Entered: 09/18/2024) |
|---|---|---|
| 09/19/2024 | 6 | NOTICE of Attorney Appearance by Timothy W Miller on behalf of Mark Gordon, Wyoming Governor (Miller, Timothy) (Entered: 09/19/2024) |
| 09/19/2024 | 7 | ANSWER to Complaint with Affirmative Defenses, by Wyoming Governor, Mark Gordon. (Attachments: # 1 Exhibit A − Resignation Email) (Miller, Timothy) (Entered: 09/19/2024) |
| 09/19/2024 | 8 | DEMAND for Trial by Jury filed by Defendants Mark Gordon, Wyoming Governor. (Miller, Timothy) (Entered: 09/19/2024) |
| 09/20/2024 | 9 | NOTICE of Attorney Appearance by Brandi Lee Monger on behalf of Mark Gordon, Wyoming Governor (Monger, Brandi) (Entered: 09/20/2024) |
| 09/24/2024 | 10 | (TEXT−ONLY) NOTICE of Hearing: BY TELEPHONE − All parties shall appear by telephone through the Courts conference call system. Guests call: 307/735−3644, access code: 557993669#. **Initial Pretrial Conference set for 11/5/2024 01:30 PM before US Magistrate Judge Scott P Klosterman.** (Court Staff, sal) (Entered: 09/24/2024) |
| 10/01/2024 | 11 | MOTION for Preliminary Injunction filed by Plaintiff Frederick William Cubin, III. (Melchior, D) (Entered: 10/01/2024) |
| 10/01/2024 | 12 | BRIEF *in Support of* 11 Motion for Preliminary Injunction filed by Plaintiff Frederick William Cubin, III. (Attachments: # 1 Exhibit Declaration of Dr. Eric Cubin in Support of Plaintiff's Motion for Preliminary Injunction) (Melchior, D) Modified text on 10/8/2024 (Court Staff, sjlg). (Main Document 12 replaced on 10/29/2024 to remove live links) (Court Staff, scat). M (Entered: 10/01/2024) |
| 10/01/2024 | 13 | (TEXT−ONLY) NOTICE of Hearing on 11 MOTION for Preliminary Injunction IN−PERSON. **Motion Hearing set for 10/25/2024 01:00 PM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.** (Court Staff, semt) (Entered: 10/01/2024) |
| 10/04/2024 | 14 | ~~MOTION REFERRED TO Judge Scott P Klosterman.~~ Stipulated MOTION to Vacate October 25, 2024 Hearing on Plaintiff's Motion for Preliminary Injunction filed by Plaintiff Frederick William Cubin, III. (Attachments: # 1 Proposed Order)(Melchior, D) Struck referral text on 10/4/2024 (Court Staff, semt). (Entered: 10/04/2024) |
| 10/04/2024 | | Motions No Longer Referred: 14 Stipulated MOTION to Vacate October 25, 2024 Hearing on Plaintiff's Motion for Preliminary Injunction (Court Staff, semt) (Entered: 10/04/2024) |
| 10/07/2024 | 15 | ORDER by the Honorable Scott W Skavdahl granting 14 Motion to Vacate. The preliminary injunction hearing set for October 25, 2024, is hereby vacated and reset to November 8, 2024, commencing at 1:00 pm. This matter is stacked #3 on the Court's docket behind two criminal jury trials. IT IS FURTHER ORDERED that Defendant shall file his written response to Plaintiff's motion for preliminary injunction **on or before October 25, 2024**(Court Staff, scat) (Entered: 10/07/2024) |
| 10/07/2024 | 16 | (TEXT−ONLY) NOTICE of Hearing on 11 MOTION for Preliminary Injunction IN−PERSON. **Motion Hearing RESET for 11/8/2024 01:00 PM in Casper** |

| | | **Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.** (Court Staff, scat) (Entered: 10/07/2024) |
|---|---|---|
| 10/18/2024 | 17 | NOTICE by Plaintiff Frederick William Cubin, III (Attachments: # 1 Exhibit) (Melchior, D) (Entered: 10/18/2024) |
| 10/18/2024 | 18 | MOTION REFERRED TO Judge Scott P Klosterman. MOTION for M.E. Buck Dougherty III to appear pro hac vice; Check not tendered; filed by Plaintiff Frederick William Cubin, III. (Attachments: # 1 Exhibit)(Melchior, D) (Entered: 10/18/2024) |
| 10/18/2024 | 19 | ORDER by the US Magistrate Judge Scott P Klosterman granting 18 MOTION for M.E. Buck Dougherty III to appear pro hac vice; Check not tendered; filed by Frederick William Cubin, III (cc: counsel via email) (Court Staff, semt) (Entered: 10/18/2024) |
| 10/18/2024 | | FINANCIAL ENTRY: PAYMENT OF $100 RECEIVED FOR PRO HAC VICE FEE FOR M.E. Buck Dougherty III. RECEIPT 2–3752. (Court Staff, smek) (Entered: 10/21/2024) |
| 10/25/2024 | 20 | RESPONSE to 11 Motion for Preliminary Injunction filed by Defendants Mark Gordon, Wyoming Governor. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D) (Monger, Brandi) (Attachments 2 and 4 replaced on 11/7/2024 to remove live links) (Court Staff, semt). (Entered: 10/25/2024) |
| 10/30/2024 | 21 | MOTION REFERRED TO Judge Scott P Klosterman. Stipulated MOTION to Continue (Non–Dispositive). Requesting continuance of Initial Pretrial Conference filed by Defendants Mark Gordon, Wyoming Governor. (Attachments: # 1 Proposed Order)(Monger, Brandi) (Entered: 10/30/2024) |
| 10/31/2024 | 22 | ORDER by the US Magistrate Judge Scott P Klosterman granting 21 Motion to Continue Initial Pretrial Conference. **Initial Pretrial Conference RESET from 11/5/24 to 12/3/2024 01:30 PM via telephone before US Magistrate Judge Scott P Klosterman.** Call–in information provided previously remains the same.(Court Staff, sal) (Entered: 10/31/2024) |
| 10/31/2024 | 23 | Notice of Pro Hac Vice Attorney Appearance by Buck Dougherty on behalf of Frederick William Cubin, III (Dougherty, Buck) (Entered: 10/31/2024) |
| 11/08/2024 | 24 | MINUTES for proceedings held before Honorable Scott W Skavdahl: Motion Hearing on 11 Motion for Preliminary Injunction held on 11/8/2024. Evidence entered. Witnesses: Dr. Frederick Cubin, Lacey Mockensturm. Motion taken under advisement. (Court Reporter Megan Strawn.) (Court Staff, semt) (Entered: 11/08/2024) |
| 11/14/2024 | 25 | ORDER by the Honorable Scott W Skavdahl denying 11 Motion for Preliminary Injunction. (Court Staff, scat) (Entered: 11/14/2024) |
| 11/25/2024 | 26 | MOTION for Judgment *on the Pleadings* filed by Defendants Wyoming Governor, Mark Gordon. (Monger, Brandi) (Entered: 11/25/2024) |
| 11/25/2024 | 27 | BRIEF *in Support* re 26 Motion for Judgment filed by Defendants Wyoming Governor, Mark Gordon. (Monger, Brandi) Modified text on 11/26/2024 (Court Staff, sjlg). (Entered: 11/25/2024) |
| 11/25/2024 | 28 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Preliminary Injunction held on 11/08/24 before Judge Scott W. Skavdahl. To purchase a copy of this transcript, please contact Court Reporter Megan Strawn, phone (307) 232–2626 or email |

| | | strawnreporting@yahoo.com. A party must file a Notice of Intent to Request Redaction within 7 calendar days. If a party fails to request redaction, the unredacted transcript attached to this entry will be made available electronically without redaction. Notice of Intent to Redact due 12/2/2024. Notice of Redaction Deadline due 12/16/2024. Redacted Transcript Deadline set for 12/26/2024. Release of Transcript Restriction set for 2/24/2025. (Strawn, Megan) (Entered: 11/25/2024) |
|---|---|---|
| 11/26/2024 | 29 | MOTION REFERRED TO Judge Scott P Klosterman. MOTION to Stay Discovery filed by Defendants Wyoming Governor, Mark Gordon. (Attachments: # 1 Proposed Order)(Miller, Timothy) (Entered: 11/26/2024) |
| 11/26/2024 | 30 | JOINT CASE MANAGEMENT PLAN re 22 Order on Motion to Continue (Non–Dispositive), by Frederick William Cubin, III. (Dougherty, Buck) (Entered: 11/26/2024) |
| 12/04/2024 | 31 | INITIAL PRETRIAL ORDER by the US Magistrate Judge Scott P Klosterman. Stipulation Deadline 8/18/2025. Motion in Limine deadline 8/18/2025. Motions in Limine Response Deadline 9/1/2025. **Final Pretrial Conference set for 9/9/2025 at 01:00 PM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl. Jury Trial (4 days/stacked #1) set for 10/6/2025 at 09:00 AM in Casper Courtroom No. 2 (Room No. 204) before Honorable Scott W Skavdahl.** (Court Staff, sbrr) (Entered: 12/04/2024) |
| 12/06/2024 | 32 | Stipulated MOTION for Extension of Time (Dispositive) requesting extension of Response Deadlines of Plaintiff filed by Plaintiff Frederick William Cubin, III. (Attachments: # 1 Proposed Order)(Dougherty, Buck) Terminated as of 12/6/24 per 33 , on 12/10/2024 (Court Staff, semt). (Entered: 12/06/2024) |
| 12/06/2024 | 33 | ORDER Granting 32 Stipulated MOTION for Extension of Time (Dispositive) filed by Frederick William Cubin, III by the Honorable Scott W Skavdahl. The time for Plaintiff to file a response to Defendant's Motions for 1) Judgment on the Pleadings (ECF No. 26 ) and 2) Stay of Discovery (ECF No. 29 ), is extended until December 20, 2024. The time for Defendant to file their replies in support of Defendant's aforementioned motions is extended until January 6, 2025. (Court Staff, stbd) Modified to add hyperlinks on 12/9/2024 (Court Staff, sjlg). (Entered: 12/06/2024) |
| 12/09/2024 | 34 | NOTICE OF APPEAL as to 25 Order on Motion for Preliminary Injunction filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 12/09/2024) |
| 12/10/2024 | 35 | Preliminary Record of appeal sent to USCA and counsel re 34 Notice of Appeal (Attorney) **The procedures and appeals forms may be obtained from the U.S. Court of Appeals website: www.ca10.uscourts.gov.** (Attachments: # 1 Preliminary Record on Appeal Including Notice of Appeal) (Court Staff, semt) (Entered: 12/10/2024) |
| 12/13/2024 | 36 | Appeal Number **24–8084** received from USCA for 34 Notice of Appeal (Attorney) filed by Frederick William Cubin, III. (Court Staff, semt) (Entered: 12/13/2024) |
| 12/20/2024 | 37 | USCA Appeal Fee received $605 receipt number 2–4030 re 34 Notice of Appeal filed by Frederick William Cubin, III (Court Staff, stmo) (Entered: 12/20/2024) |
| 12/20/2024 | 38 | RESPONSE in Opposition re 26 MOTION for Judgment *on the Pleadings* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 12/20/2024) |
| 12/20/2024 | 39 | RESPONSE in Opposition re 29 MOTION to Stay Discovery filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 12/20/2024) |

| | | |
|---|---|---|
| 12/24/2024 | 40 | First TRANSCRIPT REQUEST (Transcripts Needed) by Plaintiff Frederick William Cubin, III re 34 Notice of Appeal (Attorney). (Melchior, D) Modified text and notified court reporter on 1/14/2025 (Court Staff, stbd). (Entered: 12/24/2024) |
| 12/26/2024 | 41 | (TEXT−ONLY) APPEAL ORDER from USCA as to 34 Notice of Appeal (Attorney) filed by Frederick William Cubin, III. Minute order filed – Transcript order form due 01/09/2025 for Megan Strawn.. (Text Only – No Attachment) [24−8084] (Preliminary Injunction hearing of 11/8/24) (Court Staff, semt) (Entered: 12/26/2024) |
| 01/06/2025 | 42 | REPLY to 38 Response in Opposition to Motion filed by Defendant Mark Gordon. (Monger, Brandi) (Entered: 01/06/2025) |
| 01/06/2025 | 43 | REPLY to 39 Response in Opposition to Motion *to Stay Discovery* filed by Defendants Wyoming Governor, Mark Gordon. (Miller, Timothy) (Entered: 01/06/2025) |
| 01/09/2025 | 44 | ORDER by the Honorable Scott P Klosterman granting 29 Motion to Stay Discovery. IT IS HEREBY ORDERED that all discovery in this matter is STAYED pending the resolution of Defendants Motion for Judgment on the Pleadings Pursuant to Rule 12(c) 26 . (Court Staff, sbrr) (Entered: 01/09/2025) |
| 01/15/2025 | 45 | TRANSCRIPT ORDER FORM by court reporter Megan Strawn. Transcripts due 11/25/24. (Strawn, Megan) (Entered: 01/15/2025) |
| 01/15/2025 | 46 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Preliminary Injunction held on 11/08/2024 before Judge Scott W. Skavdahl re 34 Notice of Appeal (Attorney). To purchase a copy of this transcript, please contact Court Reporter Megan Strawn, phone (307) 232−2626 or email strawnreporting@yahoo.com. A party must file a Notice of Intent to Request Redaction within 7 calendar days. If a party fails to request redaction, the unredacted transcript attached to this entry will be made available electronically without redaction. Notice of Intent to Redact due 1/22/2025. Notice of Redaction Request due 2/5/2025. Redacted Transcript Deadline set for 2/18/2025. Release of Transcript Restriction set for 4/15/2025. (Strawn, Megan) (Entered: 01/15/2025) |
| 01/15/2025 | 47 | Transcript Letter transmitted to USCA re 34 Notice of Appeal (Attorney). All transcripts that have been ordered from this reporter for this appeal are now filed with the United States District Court, District of Wyoming. (Strawn, Megan) (Entered: 01/15/2025) |
| 02/06/2025 | 48 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 1* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 49 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 2* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 50 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 3* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 51 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 4* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 52 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 5* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 53 | |

| | | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 6* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
|---|---|---|
| 02/06/2025 | 54 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 7* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 55 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 8* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 56 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 9* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 57 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 10* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 58 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 11* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 59 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 12* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/06/2025 | 60 | EXHIBIT in reference to 24 Motion Hearing, *Trial Exhibit 13* filed by Plaintiff Frederick William Cubin, III. (Dougherty, Buck) (Entered: 02/06/2025) |
| 02/25/2025 | 61 | NOTICE by Plaintiff Frederick William Cubin, III re 23 Notice of Attorney Appearance (Pro Hac Vice) *Notice of Attorney Withdrawal Local Rule 84.3(c)* (Dougherty, Buck) (Entered: 02/25/2025) |
| 02/27/2025 | 62 | NOTICE of Attorney Appearance by Bridget Conlan on behalf of Frederick William Cubin, III (Conlan, Bridget) (Entered: 02/27/2025) |
| 04/14/2025 | 63 | ORDER by the Honorable Scott W Skavdahl granting 26 Motion for Judgment on the Pleadings. Judgment on the pleadings is entered in Defendant's favor and against Plaintiff on Counts One and Two. Count Three is dismissed without prejudice. The Clerk of Court will please enter a general judgment and close this case. (Court Staff, semt) (Entered: 04/14/2025) |
| 04/14/2025 | 64 | JUDGMENT in favor of Defendant by the Honorable Scott W Skavdahl. (Court Staff, semt) The AO133 Bill of Cost form is available at https://www.wyd.uscourts.gov/forms/bill–costs. (Main Document 64 replaced with correct document on 4/18/2025) (Court Staff, semt). (Entered: 04/14/2025) |
| 04/18/2025 | 65 | NOTICE OF APPEAL as to 64 Judgment, 63 Order on Motion for Judgment, filed by Plaintiff Frederick William Cubin, III. (Conlan, Bridget) (Entered: 04/18/2025) |

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2025 APR 14  PM 3:04

MARGARET BOTKINS, CLERK
CHEYENNE

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

DR. FREDERICK WILLIAM "ERIC" CUBIN III,

     Plaintiff,

  v.

MARK GORDON, in both his personal and
official capacities as Governor of Wyoming,

     Defendant.

Case No. 24-CV-164-SWS

---

## ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

---

The Wyoming Board of Medicine (Board) is a state agency responsible for licensing and disciplining medical practitioners. *See* Wyo. Stat. §§ 33-26-201 *et seq.* Members of the Board are appointed by the Wyoming Governor with the consent of the Wyoming Senate, and they "serve at the pleasure of the governor." Wyo. Stat. § 33-26-201(a).

Wyoming Governor Mark Gordon nominated Dr. Eric Cubin to a position on the Board, and Dr. Cubin was unanimously confirmed to the position by the Wyoming Senate. Dr. Cubin is also a voluntary member of the Wyoming Medical Society (WMS), a private, professional organization for Wyoming doctors that advocates on behalf of Wyoming doctors through legislative lobbying, public outreach, and other methods.

In February 2024, Dr. Cubin sent an email to the entire Wyoming House of Representatives expressing his support for a bill then under consideration. Dr. Cubin's email was not limited to voicing his position on the bill, though. It also informed the Wyoming House of his dispute with WMS and its current leadership because WMS had expressed opposition to the

WYD 8

same bill. Dr. Cubin asserted WMS had "been essentially hijacked by the far left." Dr. Cubin continued by alleging a specific doctor, "presumably" in conjunction with WMS leadership, "ignored and suppressed" relevant information contrary to WMS' public position on the bill.

The bill eventually passed both chambers of the Wyoming Legislature and was signed into law by Governor Gordon. In late April 2024, though, Governor Gordon removed Dr. Cubin from the Board, informing Dr. Cubin that his comments in his email could cause certain doctors who may have to appear before the Board with their medical license and livelihood on the line to question the impartiality and fairness of the Board proceeding.

Dr. Cubin then filed suit, asserting Governor Gordon had unlawfully retaliated against him for exercising his First Amendment rights to free speech and to petition the government, and he asserts a similar claim under the Wyoming State Constitution. (ECF 1.) He seeks to be restored to his position on the Board and the recovery of monetary damages. (ECF 1 p. 18.)

Governor Gordon now asks for judgment on the pleadings against Dr. Cubin's two federal claims and the dismissal of his state-law claim. (ECF 26, 27.) Dr. Cubin filed an opposition to the motion (ECF 38), and Governor Gordon replied (ECF 42). Having considered the parties' arguments and reviewed the record herein, the Court finds and concludes the request for judgment on the pleadings is well taken and should be granted.

## STANDARD OF ADJUDICATION FOR JUDGMENT ON THE PLEADINGS

Once the pleadings are closed, Federal Rule of Civil Procedure 12(c) allows a party to seek judgment based on the pleadings so long as it is early enough not to delay trial. Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (quoting *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000)). The

Court's function when considering a Rule 12(b)(6) or Rule 12(c) motion "is not to weigh potential evidence that the parties might present at trial." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). Instead, the Court examines the legal sufficiency of the complaint, and the motion should be granted "only when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Id.* (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). To overcome a Rule 12(b)(6) or Rule 12(c) motion, a complaint's factual allegations, assumed to be true, must "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the Court accepts the nonmoving party's well-pled factual allegations as true, it is not bound to accept an asserted legal conclusion as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## THE COMPLAINT'S ALLEGATIONS

Plaintiff Eric Cubin is a licensed physician who resides and works in Wyoming. (Compl. ¶ 8.[1]) Defendant Mark Gordon is the Governor of Wyoming. (*Id.* ¶ 9.)

The Wyoming Board of Medicine is a statutorily-created state agency "responsible for issuing and renewing licenses for physicians and other medical practitioners in Wyoming." (*Id.* ¶ 13 (citing Wyo. Stat. Ann. § 33-26-202).)

> The Board oversees medical regulation, compliance, and discipline. Its duties include ensuring that physicians adhere to state laws governing medical practice, investigating complaints against medical professionals, conducting hearings, and taking disciplinary actions such as revoking or suspending medical licenses.

---

[1] ECF 1

WYD 10

(*Id.* ¶ 14 (citing Wyo. Stat. Ann. § 33-26-202).) The Board typically consists of eight members, five of which are physicians. (*Id.* ¶ 15.) Board members are appointed by the Governor of Wyoming with the advice and consent of the State senate, and they "serve at the pleasure of the governor." (*Id.* ¶¶ 17-18.) Board members (typically) serve four-year terms, and they are paid for their services in the same manner and amounts as members of the Wyoming Legislature. (*Id.* ¶¶ 16, 19.) Governor Gordon appointed Dr. Cubin to the Board for a four-year term in or around February 2024. (*Id.* ¶¶ 20-21.)

The Wyoming Medical Society (WMS) is a professional organization with its stated goal of serving the interests of Wyoming medical practitioners. (*Id.* ¶ 29.) Joining WMS is voluntary; medical practitioners need not join the organization. (*Id.* ¶ 28.) Dr. Cubin was a voluntary member of WMS. (*Id.* ¶ 30.)

**1.    Senate File 0099 and Dr. Cubin's Emails**

In February 2024, the Wyoming Legislature considered Senate File 0099, a bill also known as "Chloe's Law,"[2] "which would prohibit certain gender-affirming procedures for minors in Wyoming." (*Id.* ¶ 22.) WMS "publicly opposed Chloe's Law." (*Id.* ¶ 27.) Dr. Cubin, however, personally favored the bill and disagreed with WMS's public opposition to the bill. (*Id.* ¶ 30.)

On February 21, 2024, Dr. Cubin emailed WMS's executive director to express "his concerns about WMS's position on Chloe's Law." (*Id.* ¶ 31.) "Dr. Cubin thought it unlikely that WMS's stance reflected views of the vast majority of its members, and asked whether WMS could present physicians' views on both sides of the issue regarding Chloe's Law." (*Id.* ¶ 32.)

---

[2] This refers to Chloe Cole, an activist from California who opposes gender transition surgeries and treatments after she received transgender surgeries and treatments as a minor and thereafter "detransitioned" because she later regretted her attempts to transition from being a girl to a boy. (*See* ECF 1 ¶¶ 22-26 and footnotes therein.)

The next day, the executive director responded to explain WMS's position but did not address Dr. Cubin's "request for a more balanced presentation on Chloe's Law." (*Id.* ¶ 33.) And the day after that, the President of the WMS Board of Trustees emailed Dr. Cubin to reiterate WMS's position but also failed to respond to the concern that WMS did not fairly represent Wyoming's physicians on the matter. (*Id.* ¶ 34.)

On February 25, 2024, Dr. Cubin emailed the WMS Board to express his disagreement with WMS's position on Chloe's Law and request that WMS poll its physician members on the issue. (*Id.* ¶ 35.) Further email exchanges with WMS leadership followed, with Dr. Cubin requesting "WMS adjust its position to a more neutral stance" on Senate File 0099. (*Id.* ¶ 36.)

> On February 28, 2024, after receiving no satisfactory response from WMS leadership, Dr. Cubin sent an email from his personal email account to the entire Wyoming House of Representatives expressing his personal views in support of Chloe's Law and criticizing WMS's position against it.

(*Id.* ¶ 37.) That email stated in full:

> My name is Eric Cubin. I am a physician in Casper. I am writing you today for a couple reasons. This email was originally written with the intent of sending it to the cosponsors of SF 99, Chloe's law. After considering it for some time, I've decided to expand the audience to the entire House of Representatives because I think you all need to know what is happening.
>
> First and foremost, I want to say thank you. Thank you for spending your time and energy in an effort to keep Wyoming the last great place!
>
> Second, I'm writing you because of SF 99, Chloe's Law. There is a situation that has arisen that I want to make you aware of. In addition, I would like to present each of you with some information that you may not otherwise be provided.
>
> It saddens me very much to have to report that, under their current leadership, the Wyoming Medical Society has been essentially hijacked by the far left. It seems that they have decided to prioritize politics over their stated mission of physician advocacy. In my opinion, they have adopted and embraced "woke" positions that are not congruent with the thoughts and opinions of the majority of their physician members. In essence, I have lost all confidence in their ability or desire to faithfully represent the physicians in this state.

Please allow me to give you an example. WMS seems to have teamed up with the American Association of Pediatricians in opposing SF 99. Quite frankly, I refuse to believe that the majority of physicians in this very conservative state agree with this position - and we were never polled. This position was established by several very vocal, extremely liberal members of the Board. The position was then made public as though it actually represents the thoughts and beliefs of physicians in Wyoming when, in fact, that is probably not true.

In their opposition to Chloe's Law, the WMS has partnered with Dr. Sanderson, a pediatrician from Sheridan, who is the President of the WyAAP. Dr. Sanderson has effectively delivered the position of his organization but he has failed to tell you that there is another pediatric professional society that has taken an opposite position, the American College of Pediatricians (ACP). It turns out, the ACP put out a position statement that was revised February 5th, 2024, which reads in part:

"The ACPeds cannot condone the social affirmation, medical intervention, or surgical mutilation of children and adolescents identifying as transgender or gender nonconforming."

You can find the full text to their position statement at:

https://acpeds.org/position-statements/mental-health-in-adolescents-with-incongruence-of-gender-identity-andbiological-sex

The ACP created another germane position statement in 2018 which is worth reviewing and can be found at:

https://acpeds.org/position-statements/gender-dysphoria-in-children

You need to know that Dr. Sanderson (and presumably the WMS leadership) were aware of these ACP positions and yet they were ignored and suppressed when the WMS position was established. Further, I presume that you have only been provided with the WMS/AAP position and not the ACP position statements. As I have communicated to the entire WMS Board, it is not acceptable to only present one side of an issue in an effort to effect change in social policy.

For further illustration of the WMS's embracing of the woke transgender movement, I would also invite you to look at their Spring 2023 issue of "Wyoming Medicine" magazine. In this particular issue they feature "Gender Affirming Care" on the cover and in a feature article. I have no idea why the WMS has elected to take this unnecessary position that is so clearly contrary to the viewpoint of the majority of their members.

You can find the Spring 2023 edition of "Wyoming Medicine" here:

https://www.wyomed.org/wp-content/uploads/2023/05/23-WMS-

0012_Spring2023_digital.pdf

I want to be very clear that the WMS membership was never polled on their opinions of "Gender Affirming Care" even though I have implored the leadership to do so. It feels very much like the leadership at WMS has inserted their opinions in hopes that the WMS membership would not notice or speak up.

At this point, the strongest argument that I've heard in favor of killing this bill, as Dr. Sanderson referred to in his Senate testimony, is that the legislature should not do anything to interfere with the doctor patient relationship. At face value, I agree with that wholeheartedly. That being said, there are some instances in which, for the safety of the public, it would be completely appropriate and reasonable for the legislature to make rules governing what is and is not acceptable in our society. For example, if a physician moved into our state and started performing physician-assisted suicide, should that be allowed because it falls under the doctor-patient relationship?

Another example that I would offer for your consideration is that of child abuse. All physicians are legally and morally required to report any instance in which we suspect child abuse. Why? Is that government overreach? Does that violate the doctor patient relationship? Obviously, we all do that to protect our youth. "Gender affirming care" with the use of puberty blockers and hormones in a patient with normal physiology takes a patient who is normal and makes them abnormal. How can that be viewed as anything but harmful? This is particularly true in young people who are impressionable and whose brains have not developed sufficiently to make decisions such as these - and it will likely have negative effects on them later in life. When it comes to gender affirming care in children, we can protect them by not allowing them to engage in it.

I think it is important for you to know that I have aggressively tried to address this situation with the WMS Board over the last couple days. I was given an assurance earlier today that the WMS Board will be holding an executive session of some kind to determine if they will be changing their position from opposing this bill to a neutral position. At this time, I have not been given any assurance that the WMS will be changing their position, so I feel the need to advocate on my own behalf by coming to you directly with this information. It is entirely possible that when this bill is considered in committee and on the floor that the WMS position may have been changed to neutral. Up to this point, however, they have not changed their position to neutral.

From the perspective of a Wyoming doctor who actually practices medicine at the very hospital where he was born, I can tell you that this is a good bill. Please do not kill it, combine it, or amend it into oblivion. This is very clearly an instance where it is completely appropriate and reasonable for all of you to stand up and say "we don't do that here".

WYD 14

Thank you again for all that you are doing for the citizens of Wyoming and for considering my concerns. I hope that you find the information presented above helpful in promoting and passing SF 99. Please feel free to reach out to me if you have any questions or concerns.

God Bless,
Eric Cubin MD, MS

(Compl. Ex. 1.) "Dr. Cubin did not claim in his email to be speaking on behalf of the" Wyoming

Board of Medicine. (Compl. ¶ 40.)

Senate File 0099, "Chloe's Law," was passed by the Wyoming Legislature and signed

into law by Governor Gordon. (*Id.* ¶ 43.)

## 2.      Dr. Cubin's Removal from the Board of Medicine

On April 22, 2024, not quite two months after Dr. Cubin's email to the Wyoming House

of Representatives, "Governor Gordon sent a letter to Dr. Cubin stating that Gordon was

removing Cubin from the Wyoming Board of Medicine." (Compl. ¶ 44.) In that removal letter,

Governor Gordon wrote the following:

> I have been made aware of your email to the members of the House of Representatives during this last legislative session regarding SF0099 in which you strongly encouraged the members to pass this legislation and criticized the Wyoming Medical Society's opposition to the bill. I certainly appreciate your position on this issue and respect your right to impart it to the Legislature. Nonetheless, no matter what anyone's personal expressed beliefs may be, it is important that the professionals governed by the Board of Medicine have confidence that board members prosecute their responsibilities on the board in an objective and unbiased way. I believe your comments on this particular legislation could give doctors, who are licensed by the Board of Medicine, a reason to be concerned that you might use your position to advocate for a particular position when considering matters that should be considered absent an agenda or prejudice. Medical professionals should be confident that their licensure, which is their livelihood, will be handled professionally and clinically examined on merits alone. Even the appearance of bias can be disquieting as well as erode confidence in the Board's presumed impartiality.
>
> I am certain you would understand that while you certainly are entitled to your First Amendment right to free speech, as an individual member of the Board, you would not be entitled to speak for the Board unilaterally. Nevertheless, some may not appreciate that your personal comments might not necessarily

be those of the Board as a whole. It has never been my intention to inhibit your own ability to express your views unabashedly or to confuse anyone's personal opinions and beliefs with those of any of our boards. Therefore, as I have done before, when a member of a board chooses to express personal beliefs in a way that can be construed as speaking for the body, I have elected to relieve that member of the constraints board membership requires.

Therefore, in this instance, sadly, I believe it is best to remove you from the Board of Medicine. I wish you all the best in your future endeavors and urge you to continue to advocate for your beliefs.

(Compl. Ex. 2.)

"After being forced by Governor Gordon to resign from the Board, Dr. Cubin verbally resigned, which Governor Gordon accepted and made effective as of April 22, 2024, the same day as Gordon's letter to Dr. Cubin removing him from the Board." (Compl. ¶ 56; Compl. Ex. 3.)

Four months later, Dr. Cubin filed this lawsuit against Governor Gordon, suing the Governor in both his official and individual capacities.

## DISCUSSION

Dr. Cubin alleges two claims under federal law and one under state law. In his Count One and Count Two, Dr. Cubin sues Governor Gordon under 42 U.S.C. § 1983, alleging Governor Gordon unlawfully retaliated against him for exercising his First Amendment rights of free speech and petition. In Count Three, Dr. Cubin contends Governor Gordon violated those same rights under the Wyoming State Constitution. He seeks to be restored to his position on the Wyoming Board of Medicine and an award of money damages.

Governor Gordon asks that judgment on the pleadings be entered in his favor. He contends the complaint fails to allege a violation of Dr. Cubin's federal constitutional rights. He further asserts he is protected from Dr. Cubin's claims in his official capacity by Eleventh Amendment immunity and in his individual capacity by qualified immunity. The Court begins

with a preliminary matter concerning its continued jurisdiction in the face of Dr. Cubin's

pending interlocutory appeal.

1.    **District Court's Continued Jurisdiction During Interlocutory Appeal**

The Court previously denied Dr. Cubin's request for a preliminary injunction to restore

him to a position on the Board while this lawsuit proceeded, and Dr. Cubin is currently pursuing

an interlocutory appeal from that decision. (ECF 25, 34, 36.) Generally, whenever an appeal is

taken, including most interlocutory appeals, the district court is divested of jurisdiction over

matters integral to the appeal, and such jurisdiction is transferred to the appellate court while the

district court retains jurisdiction only over matters collateral to (not directly involved in) the

appeal. *Stewart v. Donges*, 915 F.2d 572, 575-76 (10th Cir. 1990).

However, interlocutory injunction appeals often operate slightly differently. "Ordinarily

an interlocutory injunction appeal under 1292(a)(1) does not defeat the power of the trial court to

proceed further with the case." *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 791–92

(10th Cir. 2013) (quoting 16 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* §

3921.2).

> Interlocutory injunction appeals would come at high cost if the trial court were
> required to suspend proceedings pending disposition of the appeal. The delay and
> disruption alone would be costly. As importantly, cases involving injunctive relief
> are apt to present an urgent need for action. An injunction can seriously disrupt
> the affairs of those bound by it. Denial of an injunction can destroy the capacity to
> grant effective relief after trial. Continuing trial court proceedings, moreover,
> often pose little threat to orderly disposition of the appeal; ordinarily the scope of
> the appeal will be limited to consideration of the preliminary injunction decision
> itself, despite the power to reach out to other matters.

*Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1087–88 (D.N.M. 2017) (emphasis added)

(quoting Wright & Miller § 3921.2).

Here, the Court concludes it retains jurisdiction to decide Governor Gordon's 12(c)

motion for judgment on the pleadings despite the pending interlocutory injunction appeal for two

reasons. First, because the Court accepts well-pled factual allegations as true in this motion, there

are no factual determinations to be made in deciding the 12(c) motion. Second, the Tenth Circuit

has held the district court retains jurisdiction during an interlocutory injunction appeal to dismiss

under Rule 12(b)(6) for failure to state a claim, *Free Speech*, 720 F.3d at 792, and the standard of

adjudication and analysis for this Rule 12(c) motion will be identical to that of a Rule 12(b)(6)

motion.[3] The Court thus proceeds to the merits of the motion for judgment on the pleadings.

2.     **Eleventh Amendment Immunity and *Ex Parte Young* as to Official-Capacity Claims**

The Court next turns to Governor Gordon's assertion of Eleventh Amendment immunity

(ECF 27 pp. 16-18) because if it applies, the Court lacks subject-matter jurisdiction over the

official-capacity claims. *See Fowler v. Stitt*, 104 F.4th 770, 782 (10th Cir. 2024) ("[i]f Eleventh

Amendment immunity applies [and is not waived], the federal courts do not have jurisdiction");

*Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (Eleventh Amendment

immunity "constitutes a bar to the exercise of federal subject matter jurisdiction").

The Eleventh Amendment generally "bars suits in federal court against a nonconsenting

state brought by the state's own citizens." *Williams*, 928 F.3d at 1212. Dr. Cubin contends his

official-capacity claims bypass the Eleventh Amendment bar based on the *Ex parte Young*

doctrine, established in the case of *Ex parte Young*, 209 U.S. 123 (1908). "Although not properly

characterized as an exception to a state's Eleventh Amendment immunity, the doctrine allows for

---

[3] Dr. Cubin contends Governor Gordon's answer disputes many factual allegations, which makes any judgment on the pleadings improper based on the disputes of fact. (ECF 38 pp. 5-6.) While this argument may be more consistent with the plain language of Rule 12(c), i.e., "judgment on the pleadings" where an answer is a "pleading," Tenth Circuit law makes clear that the complaint's well-pled factual allegations are accepted as true for Rule 12(c) motions without reference to whether the opposing party challenges those factual allegations. *See Zevallos v. Allstate Prop. & Cas. Co.*, 776 F. App'x 559, 561 n.1 (10th Cir. 2019) (noting it was "not proper in resolving a motion under Rule 12(c)" for the district court to consider a settlement agreement attached to the defendant's answer that was not central to the plaintiff's complaint).

suits against state officials under certain circumstances." *Reyes v. First Jud. Dist. Attorney's Off.*, 497 F. Supp. 3d 994, 1001 (D.N.M. 2020).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks and citations omitted). "Thus, for the *Ex parte Young* exception to apply, Plaintiffs must show that they are: (1) suing state officials rather than the state itself, (2) alleging an ongoing violation of federal law, and (3) seeking prospective relief." *Reyes*, 497 F. Supp. 3d at 1001. In examining whether *Ex parte Young* applies to evade Eleventh Amendment immunity, the Court does not analyze the actual merits of the claim. *Fowler v. Stitt*, 104 F.4th 770, 782 (10th Cir. 2024).

Dr. Cubin readily satisfies the first and third requirements under *Ex parte Young*. He is suing Governor Gordon for having removed him from the Board; Dr. Cubin is not suing the State of Wyoming itself. And in his official-capacity claims, he seeks the prospective relief of reinstatement to the Board. The dispute comes down to whether Dr. Cubin has alleged an ongoing, rather than a completed, violation of federal law.

It appears the Tenth Circuit has never expressly determined whether the removal of a public employee from their position in alleged violation of federal law constitutes an "ongoing violation." However, by analogy to a Tenth Circuit case, the Court finds such an allegation to satisfy the second *Ex parte Young* requirement. In *Rounds v. Clements*, 495 F. App'x 938 (10th Cir. 2012), Mr. Rounds, a state prisoner and an electrician by trade, was allowed to perform electrical jobs inside the prison facility and enjoyed several related privileges. *Id.* at 939.

However, when certain prison officials allegedly instructed him to engage in cheap, inferior electrical work in violation of the state code, he refused and complained. In response, prison officials allegedly retaliated against him by transferring him to a less desirable facility with the loss of his electrician-related privileges. *Id.* Like Dr. Cubin here, Mr. Rounds alleged he was "being retaliated against for exercising his free speech rights, all in violation of the First Amendment and actionable under 42 U.S.C. § 1983." *Id.*

> In his appeal, [Executive Director of the Colorado Department of Corrections] Mr. Clements argues that we should grant him immunity from suit because, contrary to the district court's ruling, he hasn't participated in any ongoing violation of federal law as required by *Ex parte Young*. The problem with this argument is that Mr. Rounds's operative complaint alleges that he is currently, on an ongoing basis, being denied his previous prison placement and many other privileges in retaliation for exercising his First Amendment rights. Aplt.App. at 134 ¶ 29. And there is no dispute Mr. Rounds added Mr. Clements to the suit because Mr. Clements alone has the power to undo this state of affairs, *see* Aplt. Br. at 8 (acknowledging this), something Mr. Clements has so far declined to do. As remedy, Mr. Rounds seeks only a prospective injunction forcing Mr. Clements to restore the privileges he has not chosen to restore voluntarily. Aplt.App. at 134 ¶ 36, 135 ¶ A. Drawing the reasonable inference in Mr. Rounds's favor—as we must at this, the motion to dismiss stage, *see United States v. Rodriguez–Aguirre*, 264 F.3d 1195, 1203 (10th Cir. 2001)—it is plain enough Mr. Rounds alleges that Mr. Clements is currently participating in an ongoing scheme to deny him (Mr. Rounds) a prison placement and privileges that he once enjoyed, all in retaliation for exercising his First Amendment rights.

*Id.* at 940.

Like the plaintiff in *Rounds*, Dr. Cubin here complains that "he is currently, on an ongoing basis, being denied his previous" position on the Board in violation of his First Amendment protections and that Governor Gordon is the official capable of restoring him to the Board. Accordingly, at least for purposes of the current motion, the Court finds Dr. Cubin has alleged an ongoing violation of federal law sufficient to satisfy the *Ex parte Young* doctrine. *See Klaassen v. Univ. of Kansas Sch. of Med.*, 84 F. Supp. 3d 1228, 1245–46 (D. Kan. 2015) ("[P]laintiff's Second Amended Complaint alleges that he is currently, on an ongoing basis,

being denied his position as a tenured professor at KUMC, in violation of his First Amendment and due process rights. These allegations plead sufficient facts of an ongoing violation of federal law to survive a motion for judgment on the pleadings in the Tenth Circuit.") (citing *Rounds*, 495 F. App'x at 940), *clarified on denial of reconsideration*, No. 13-CV-2561-DDC-KGS, 2015 WL 2400773 (D. Kan. May 15, 2015).

The Court's "straightforward inquiry" into Dr. Cubin's complaint finds it "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md.*, 535 U.S. at 645. Consequently, the Court determines the *Ex parte Young* doctrine applies in this case to evade Eleventh Amendment immunity concerning the official-capacity claims against Governor Gordon, and therefore the Eleventh Amendment does not strip the Court of subject-matter jurisdiction over the official-capacity claims.

3.   **Failure to Allege a Plausible First Amendment Violation**

Governor Gordon contends Dr. Cubin's Counts One and Two fail to state a viable claim on which relief can be granted because the complaint does not set forth unlawful retaliation for Dr. Cubin's exercise of his First Amendment rights. (ECF 27 pp. 5-16.)

Dr. Cubin's government service on the Board and government compensation rendered him a public employee. "As applied to the states by the Fourteenth Amendment, the First Amendment prevents state and local governments from 'condition[ing] public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.'" *Duda v. Elder*, 7 F.4th 899, 910 (10th Cir. 2021) (quoting *Connick v. Myers*, 461 U.S. 138, 142 (1983)). "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom," but the First Amendment continues to protect "a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public

concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 418 (2006). "The government employer, however, also has a 'countervailing interest in controlling the operation of its workplaces.'" *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018) (quoting *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014)). "Thus, a public employer's legitimate needs and interests may justify some limitations on the speech of employees." *Ramirez v. Oklahoma Dep't of Mental Health*, 41 F.3d 584, 594 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kansas Med. Ctr.*, 163 F.3d 1186, 1194-97 (10th Cir. 1998).

"The government has a substantial interest in ensuring that all of its operations are efficient and effective." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011). When public employees "speak out, they can express views that contravene governmental policies or impair the performance of governmental functions." *Garcetti*, 547 U.S. at 419. "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Knopf*, 884 F.3d at 944 (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 568 (1968)). "To determine if an employer's adverse employment action against an employee is an impermissible retaliation under the First Amendment, we apply the *Garcetti/Pickering* test." *Id.* at 945. The *Garcetti/Pickering* analysis comprises five inquiries:

(1)  whether the speech was made pursuant to an employee's official duties;

(2)  whether the speech was on a matter of public concern;

(3)  whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;

(4)  whether the protected speech was a motivating factor in the adverse employment action; and

(5)  whether the defendant would have reached the same employment decision
in the absence of the protected conduct.

*Id.* (quoting *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014)). "The first three inquiries

are ordinarily matters of law for the court to decide, while the last two are for the factfinder."

*Fields v. City of Tulsa*, 753 F.3d 1000, 1014 (10th Cir. 2014) (citing *Deutsch v. Jordan*, 618 F.3d

1093, 1098 (10th Cir. 2010)). "Under this analysis, a public employee's speech is unprotected if

it was made pursuant to official duties, if it was not on a matter of public concern, or if the

balance of interests favors the employer." *Id.* (citing *Deutsch*, 618 F.3d at 1097-98).

The *Garcetti/Pickering* test applies to Dr. Cubin's free-speech claim as well as his right-

to-petition claim. *See Guarnieri*, 564 U.S. at 398 ("The framework used to govern Speech Clause

claims by public employees, when applied to the Petition Clause, will protect both the interests

of the government and the First Amendment right."); *Fields*, 753 F.3d at 1013 n.1 (noting the

*Garcetti/Pickering* analysis "would be the same" whether under the Free Speech clause or the

Petition clause); *Morris v. City of Colorado Springs*, 666 F.3d 654, 660-61 (10th Cir. 2012)

(noting the *Garcetti/Pickering* analysis applies to both free-speech and right-to-petition claims).

For purposes of this motion for judgment on the pleadings, Governor Gordon focuses on

the second and third steps, contending Dr. Cubin's speech was not a matter of public concern and

the balance of interests favors the government employer. (ECF 27 pp. 6-16.)

### 3.1   Matter of Public Concern

"Matters of public concern are 'those of interest to the community, whether for social,

political, or other reasons.'" *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192,

1205 (10th Cir. 2007) (quoting *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000)).

In determining whether speech pertains to a matter of public concern, the court
may consider "the motive of the speaker and whether the speech is calculated to

disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." [*Lighton*, 209 F.3d at 1224]. Statements revealing official impropriety usually involve matters of public concern. *Id.* Conversely, speech that simply airs "grievances of a purely personal nature" typically does not involve matters of public concern. *Id.* at 1225. In deciding what is a matter of public concern, we are required to consider "the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

*Id.* For purposes of example, the Tenth Circuit has held the following matters are not of public concern: "speech regarding grievances about internal departmental affairs, disputes over the term of employment, and workplace frustration." *Id.* (internal citations omitted).

Dr. Cubin attempts to frame his complaint as a dispute over his personal support of Senate File 0099, "Chloe's Law." It is uncontested that Dr. Cubin spoke as a citizen on a public matter when he expressed his support for the bill then under consideration. However, from the view of the *Garcetti/Pickering* analysis, the issue with Dr. Cubin's email to the Wyoming House of Representatives is not his expression of support for Senate File 0099; it is the public airing of his dispute with Wyoming Medical Society's leadership. Governor Gordon even referenced Dr. Cubin's extraneous comments in the removal letter, noting the Dr. Cubin had "strongly encouraged the members to pass this legislation **and criticized the Wyoming Medical Society's opposition to the bill**." (Compl. Ex. 2 (emphasis added).)

WMS is a private organization of which Dr. Cubin was a voluntary member. (Compl. ¶¶ 28, 30.) Dr. Cubin's email expressed his personal dispute and frustrations with WMS. His own words make that much clear:

> It saddens me very much to have to report that, under their current leadership, the Wyoming Medical Society has been essentially hijacked by the far left. It seems that they have decided to prioritize politics over their stated mission of physician advocacy. In my opinion, they have adopted and embraced "woke" positions that are not congruent with the thoughts and opinions of the majority of their physician members. In essence, I have lost all confidence in their ability or desire to faithfully represent the physicians in this state.

(Compl. Ex. 1.) Dr. Cubin's concerns may have been extremely relevant to WMS and its other members, but WMS is a private organization with the "stated mission of physician advocacy," which is not a matter of general concern for the vast majority of the public who are not physicians or other medical professionals. Dr. Cubin's statement that he had "lost all confidence" in WMS's leadership to pursue its mission highlights the fact that this was his personal concern about a private organization.

Dr. Cubin asserts, "WMS's failure to poll and accurately represent its members' views in its presentation regarding a piece of legislation is a matter of public concern." (ECF 38 p. 10.) Not so. This only shows Dr. Cubin's personal dispute with how WMS was internally operating.

Dr. Cubin relies on *Pryor v. School District No. 1*, 99 F.4th 1243 (10th Cir. 2024), to advance his assertion that his criticisms of WMS concerned the public, but *Pryor* does not provide the shelter Dr. Cubin seeks. In *Pryor*, the Tenth Circuit noted, "Even if personal grievances partially motivate speech, the speech still involves matters of public concern when it reveals official wrongdoings because this interests the public." *Id.* at 1252. And the plaintiff in *Pryor* "expressed that he intended to expose wrongdoing in the local school board and school administration." *Id.* Big difference here. Dr. Cubin's complaints about WMS's leadership and activities did not "reveal[] official wrongdoings." It revealed that an advocacy association with which Dr. Cubin voluntarily associated himself was not advocating in a manner approved by him. Even in the current bipartisan environment in which this nation finds itself entrenched, it cannot be said that expressing disagreement with a private organization's operations and positions "disclose[s] misconduct" or "reveals official wrongdoings." *Pryor* does not support Dr. Cubin's claim that his WMS criticism was a matter of public concern.

The Court has no doubt Dr. Cubin's concerns about WMS's leadership and activities

were genuine, but his "criticism[] of the [WMS] Board" is "clearly not [a] matter[] of public concern because it is 'internal in scope and personal in nature.'" *Brammer-Hoelter*, 492 F.3d at 1206 (quoting *Bunger v. Univ. of Okla.*, 95 F.3d 987, 992 (10th Cir. 1996)). His comments about his ongoing dispute with WMS were unnecessary and extraneous to his support of Senate File 0099. Accepting the factual allegations in the complaint as true, Dr. Cubin's grievance about WMS was a matter of personal interest not protected by the First Amendment. Consequently, Dr. Cubin's claims of First Amendment retaliation (Counts One and Two) fail to state claims on which relief can be granted. *See Morris*, 666 F.3d at 663 n.5 (noting that the Court "need not address any other prong" after dismissal on the second prong of the *Garcietti/Pickering* test).

### 3.2    **Balance of Interests**

Even if Dr. Cubin's complaint plausibly showed his assertions about WMS concerned the public, the balance of interests weighs in Governor Gordon's favor of promoting efficiency.

The third element of the *Garcetti/Pickering* test asks whether the government employer's interests in promoting and ensuring efficient public service outweigh the public employee's First Amendment interests. "The only public employer interest that outweighs the employee's free speech interest is avoiding direct disruption, *by the speech itself*, of the public employer's internal operations and employment relationships." *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1222 (10th Cir. 2017) (cleaned up) (emphasis in original) (quoting *Trant*, 754 F.3d at 1166). "[T]he manner, time, and place of the employee's expression are relevant, as is the context in which the dispute arose. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

> Pertinent factors to consider include whether the statement: "[1] impairs discipline by superiors or harmony among coworkers, [2] has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or [3] impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise."

*Helget*, 844 F.3d at 1222 (quoting *Rankin*, 483 U.S. at 388).

### 3.2.1   "Long After" Versus "Soon After"

"In analyzing the employer's interest in avoiding disruption, different standards apply depending on whether the adverse employment action occurred 'long after' or 'soon after' the employee's protected speech." *Duda*, 7 F.4th at 912. If the adverse employment action occurs "long after" the public employee's speech, then the government employer must prove the speech actually disrupted its operations in order to outweigh the employee's First Amendment interests. *Id.* at 912-13; *Deschenie v. Bd. of Educ. of Cent. Consol. Sch. Dist. No. 22*, 473 F.3d 1271, 1280 (10th Cir. 2007) ("once a sufficient time has passed, the government employer may satisfy its burden only by showing specific evidence of actual disruption"). In contrast, when the adverse employment action is taken "soon after" the subject speech, there is no requirement that the government employer show the employee's speech caused an actual disruption to government operations and instead can rely on a reasonable prediction of disruption. *Duda*, 7 F.4th at 913; *Deschenie*, 473 F.3d at 1279 (where the adverse employment action is taken "soon after" the speech, a court will generally defer to the employer's reasonable predictions of disruption that are supported by specific evidence).

Here, Dr. Cubin sent his email to the Wyoming House of Representatives on February 28, 2024 (Compl. Ex. 1), and Governor Gordon removed him from the Board on April 22, 2024 (Compl. Ex. 2), a period of slightly less than two months. The Tenth Circuit has not fixed a time limitation for separating "soon after" from "long after." *Duda*, 7 F.4th at 913 n.10; *see Deschenie*, 473 F.3d at 1279 ("When the adverse employment action takes place several months after the employee's speech, however, it is no longer reasonable for the government to rely on predictions of disruption which did not materialize."). The Tenth Circuit has determined, though,

that six months with no actual disruption is "long after" the subject speech, and such a length of time precludes any "prediction" of disruption weighing in the government employer's favor. *Id.* (citing *Kent v. Martin*, 252 F.3d 1141, 1146 (10th Cir. 2001)). Similarly, the Tenth Circuit has said that adverse employment action taken within one month of the subject speech falls on the "soon after" side of the line, allowing the government employer to rely on its prediction of disruption. *Deschenie*, 473 F.3d at 1280-81. But where the line actually rests between "soon after" and "long after" remains undefined.

Accepting the complaint's factual allegations as true, and specific to this case, the Court concludes Governor Gordon's action occurred "soon after" Dr. Cubin's email to the Wyoming House for two reasons. First, the slightly less than two months in this case is not anywhere near the timeframes considered by the Tenth Circuit to be clearly "long after;" it is far closer to *Deschenie's* one month (which was "soon after") than to *Kent's* six months (which was "long after"); and it is less than the "several months" referenced in *Deschenie*. Second, particular to the circumstances here, the Court considers it significant that Dr. Cubin's work on the Board was not day-to-day but was rather sporadic, thus making any opportunity for his email to disrupt the Board's work rather sporadic as well. In a more traditional employment context, the opportunity for an employee's speech to disrupt the functioning of their employment is far more frequent, and likely more immediate, than the occasional work done by the Board members. Thus, the Court considers Dr. Cubin's removal from the Board to have occurred "soon after" his subject speech.[4] Consequently, "we do not require a government employer to allow the disruption to manifest before acting." *Bailey v. Indep. Sch. Dist. No. 69 of Canadian Cnty. Oklahoma*, 896

---

[4] Governor Gordon did not state the date on which he learned of Dr. Cubin's email to the House members. His April 22, 2024 removal letter noted that he had "been made aware of your email to the members of the House of Representatives during this last legislative session . . .." (Compl. Ex. 2).

F.3d 1176, 1183 (10th Cir. 2018). "Instead, when the employer's intent in taking an adverse action is to avoid actual disruption, we will generally defer to a public employer's reasonable predictions of disruption, as long as the predictions are supported by specific evidence." *Duda*, 7 F.4th at 913 (internal citations and quotations omitted).

### 3.2.2    Governor's Significant Interest in Avoiding Disruption to the Board's Work

When a Board member sits in judgment of a licensee, they of course owe the licensee a fair and impartial consideration of the matter, but they also owe the appearance of fairness and impartiality. "Due process requires that an agency provide a fair trial without the appearance of bias or prejudice." *Painter v. Abels*, 998 P.2d 931, 938 (Wyo. 2000). In an agency's action in a licensing matter, "[f]undamental considerations require not just fairness in fact but also fairness in appearance." *Dorr v. Wyo. Bd. of Certified Public Accountants*, 21 P.3d 735, 745 (Wyo. 2001). "It is clearly established law that '[m]aintaining the appearance of impartiality of the judiciary is an interest of vital importance.'" *Stengle v. Office of Dispute Resolution*, 631 F. Supp. 2d 564, 575 (M.D. Pa. 2009) (quoting *Kirchgessner v. Wilentz*, 884 F. Supp. 901, 912 (D.N.J. 1995)); *see U.S. Civil Serv. Comm'n v. Nat'l Assoc. of Letter Carriers*, 413 U.S. 548, 565 (1973) ("it is not only important that the Government and its employees in fact avoid practicing political justice, but it is also critical that they appear to the public to be avoiding it, if confidence in the system of representative Government is not to be eroded to a disastrous extent"). "[T]he maintenance of [Dr. Cubin's] impartiality, and appearance thereof, was crucial to the effective operation of" the Board, particularly because one of the primary duties of Board members is to sit as arbiters over complaints against other medical providers. *See Stengle*, 631 F. Supp. 2d at 576. Governor Gordon accurately stated in his removal letter to Dr. Cubin: "Even the appearance of bias can be disquieting as well as erode confidence in the Board's presumed impartiality."

(ECF 1-2 p. 2.) The Court has little difficulty concluding that Governor Gordon has a significant interest in assuring members of the Board can perform their Board functions without perceived or actual bias or prejudice.

### 3.2.3   Governor's Reasonable Prediction of Disruption

In the removal letter, Governor Gordon highlighted how it is "important that the professionals governed by the Board of Medicine have confidence that board members prosecute their responsibilities on the board in an objective and unbiased way." (Compl. Ex. 2.) He also wrote of the potential disruptions to the Board's work, part of which is to pass judgment on licensing matters without the appearance of bias or prejudice:

> I believe your comments on this particular legislation could give doctors, who are licensed by the Board of Medicine, a reason to be concerned that you might use your position to advocate for a particular position when considering matters that should be considered absent an agenda or prejudice. Medical professionals should be confident that their licensure, which is their livelihood, will be handled professionally and clinically examined on merits alone. Even the appearance of bias can be disquieting as well as erode confidence in the Board's presumed impartiality.

(*Id.*) Governor Gordon's concerns about the appearance of bias or partiality are responsive to the words used by Dr. Cubin in his email to the Wyoming House of Representatives.

As discussed above, Dr. Cubin's comments to the Wyoming House went beyond his support for Senate File 0099 and into his personal disagreements with WMS and specific doctors, the same doctors who may appear before the Board to answer a complaint with their medical licenses and livelihoods in jeopardy.[5] He alleged "Dr. Sanderson (and presumably the WMS leadership)" "ignored and suppressed" the contrary position of a different pediatric

---

[5]   The Board is statutorily authorized to "[g]rant, refuse to grant, suspend, restrict, revoke, reinstate or renew licenses to practice medicine." Wyo. Stat. § 33-26-202(b)(i). The Board has the power to investigate allegations that a licensee has violated the Wyoming Medical Practice Act and to take disciplinary action against the licensee upon finding such a violation. *Id.* § 33-26-202(b)(ii).

WYD 30

organization. (Compl. Ex. 1.) These are charged allegations leveled by Dr. Cubin against specific medical providers, providers who could appear before the Board and whose careers and livelihood are affected by his work on the Board. Irrespective of the accuracy of the allegations, Dr. Sanderson and any of the WMS leadership appearing before Dr. Cubin in his role as a Board member could reasonably question whether they would receive fair consideration from him considering Dr. Cubin's allegations to the Wyoming House.

Beyond just Dr. Sanderson and WMS leadership, though, Dr. Cubin's email could also cause others, such as those on the "left" of the partisan divide, to also question whether Dr. Cubin would be a fair and impartial arbiter for them. Dr. Cubin's email expressed his sadness and lost confidence because WMS "has been essentially hijacked by the far left." (Compl. Ex. 1.) A provider who falls in this "left" or "far left" camp could reasonably question whether they can get a fair examination should they have to appear before Dr. Cubin. The same concerns could be had by those many providers who remained silent and did not offer their opinion on WMS's position. It is reasonably possible they too could fear that Dr. Cubin might take their silence as tacit agreement with the "far left" WMS position even if they personally disagreed. Employees in the Executive Branch of the Government or its agencies "are expected to enforce the law and execute the programs of the Government without bias or favoritism for or against any political party or group or the members thereof." *Nat'l Ass'n of Letter Carriers*, 413 U.S. at 565. Dr. Cubin's assertions about WMS's "hijacking" by the "far left" drew into question his ability or willingness to execute his Board responsibilities "without bias or favoritism for or against any political party or group or the members thereof." *Id.*

To be sure, Dr. Cubin could be recused or recuse himself from particular cases or proceedings that come before the Board. However, the ability to recuse or be recused from

particular proceedings does not avoid disruption of the Board's operations caused by Dr. Cubin's email comment; it in fact would constitute such disruption. The Middle District of Pennsylvania considered the potential use of recusal motions in *Stengle*:

> From these facts, one can readily infer that Plaintiff's [speech in question] had the potential to induce recusal motions from those who came before her in her hearing officer capacity. If such a motion were to be filed, either one of two things could happen. Plaintiff could recuse herself, or she could elect to deny the motion and hear the case to its conclusion. In either instance, governmental efficiency would be adversely affected.
>
> If Plaintiff denied the motion and retained the case, the losing party could appeal the decision on due process grounds, alleging that it was denied an impartial adjudication of its rights. This would entail additional governmental resources being dedicated to the appeal, which would clog dockets and ultimately reduce governmental efficiency. On the other hand, if Plaintiff chose to grant the motion and recuse herself, the case would be transferred to another hearing officer, which would not only serve to delay resolution of the case, but also to clog the docket of the newly assigned hearing officer, thereby reducing his or her ability to efficiently dispose of his or her load. Accordingly, it is easy to see that an increased number of recusal motions would severely hamper the government's ability to efficiently and effectively resolve special education issues.

*Stengle*, 631 F. Supp. 2d at 577 (internal citation omitted). The same problems exist concerning Dr. Cubin's ability to recuse himself or be recused from particular Board proceedings. Increased use of recusal is not the cure to increased fears of bias and partiality resulting from Dr. Cubin's email; rather, it is a symptom of the potential problems and governmental inefficiencies Governor Gordon intended to prevent by removing Dr. Cubin from the Board. It was reasonable for Governor Gordon to predict Dr. Cubin's extraneous comments to the Wyoming House concerning WMS and his membership on the Board could cause the Board's impartiality to be questioned and disrupt at least some of the Board's core functions.

In balancing Dr. Cubin's First Amendment interests in speaking and petitioning as a citizen on a matter of public concern against Wyoming's countervailing interests in the impartial and efficient management of its governmental affairs, the Court finds the balance favors the

government employer. Therefore Dr. Cubin's First Amendment claims fail even if his comments about WMS could be considered a matter of public concern. *See Guarnieri*, 564 U.S. at 398.

### 3.3    Dr. Cubin failed to state a plausible claim of First Amendment retaliation.

Accepting the factual allegations of Dr. Cubin's complaint as true and applying the *Garcetti/Pickering* test to Dr. Cubin's two causes of action for First Amendment retaliation, the Court finds Dr. Cubin's complaint fails to state the second and third elements of the *Garcetti/Pickering* test. Dr. Cubin's comments to the Wyoming House of Representatives about WMS did not involve a matter of public concern and were extraneous to his expressed support of Senate File 0099. Additionally, Governor Gordon's significant interests in promoting impartial and efficient public service by the Wyoming Board of Medicine outweighed Dr. Cubin's rights to free speech and petition the government regarding his comments about WMS. Thus, Dr. Cubin's comments about WMS were not protected by the First Amendment, and Governor Gordon did not violate his First Amendment rights by removing him from the Board of Medicine. *See Fields*, 753 F.3d at 1014 ("a public employee's speech is unprotected … if it was not on a matter of public concern, or if the balance of interests favors the employer"). Judgment on the pleadings is thus warranted in Governor Gordon's favor on Counts One and Two.

### 4.    Qualified Immunity as to Individual-Capacity Claims

Alternatively, even if Dr. Cubin's complaint satisfied the *Garcetti/Pickering* test, Governor Gordon would be protected from personal liability by the doctrine of qualified immunity, which "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Singh v. Cordle*, 936 F.3d 1022, 1033 (10th Cir. 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

> "When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that the defendant violated his constitutional rights and that the right was clearly established." [*Callahan v. Unified Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1027 (10th Cir. 2015)]. The law was "clearly established" only if it "was sufficiently clear that every reasonable official would understand that what he [was] doing [was] unlawful." *District of Columbia v. Wesby*, —— U.S. ——, 138 S. Ct. 577, 589, 199 L.Ed.2d 453 (2018) (internal quotation marks omitted). To make such a showing in our circuit, the plaintiff "must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (internal quotation marks omitted).

*Id.* at 1033-34. The Supreme Court has consistently admonished courts "not to define clearly established law at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 742 (2011). "'We do not require a case directly on point' before concluding that the law is clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (citation omitted).

Dr. Cubin's attempts to define clearly established law are far too general. He starts, "It is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." (ECF 38 p. 21 (quoting *Rankin*, 483 U.S. at 383).) Quite true, "[b]ut such a sweeping pronouncement of the law could not put [Governor Gordon] on fair notice that [his] conduct was illegal." *Callahan v. Unified Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1028 (10th Cir. 2015). "The proper and properly-focused inquiry," *id.*, is whether the law clearly established it was unlawful for Governor Gordon to remove Dr. Cubin from the Board in response to Dr. Cubin's comments to the Wyoming House that Governor Gordon worried could create an appearance of bias or prejudice in Dr. Cubin's work with the Board. The generic statement concerning First Amendment retaliation in *Rankin* does not get Dr. Cubin there.

Dr. Cubin offers additional authority, but it too is at an unhelpful "high level of

generality." For example, he notes the "practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs." (ECF 38 p. 22 (quoting *Irizarry v. Yehia*, 38 F.4th 1282, 1289 (10th Cir. 2022).) Again true, but Dr. Cubin's comments about WMS's leadership and internal operations did not concern "governmental affairs." This *Irizarry* quote would not have put Governor Gordon on fair notice that removing Dr. Cubin would subject Governor Gordon to personal liability. *See Frasier v. Evans*, 992 F.3d 1003, 1020-21 (10th Cir. 2021) (Plaintiff's "attempt to distill a clearly established right" based upon general First Amendment principles protecting the creation of speech and news gathering activity ran afoul of "prohibition against defining clearly established rights at high level of generality." Plaintiff failed to demonstrate how officers alleged conduct in retaliation for recording them "follows immediately from the abstract right to create speech and gather news.") (citing *Anderson v. Creighton*, 483 U.S. 635, 640-41 (1987).

And Dr. Cubin's caselaw quotations about the history, purpose, and importance of the Free Speech Clause of the First Amendment (ECF 38 pp. 22-23) are accurate, but they play no role in this qualified immunity analysis. No one disputes the significance of the First Amendment's free speech guarantee, but, like all rights, it is not without limits. For example, as noted earlier and applicable here, "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti*, 547 U.S. at 417. The history, purpose, and importance of the First Amendment rights would not have fairly put Governor Gordon on notice that he couldn't remove Dr. Cubin from the Board in response to Dr. Cubin's comments to the Wyoming House about his dispute with WMS.

Even if Governor Gordon's decision to remove Dr. Cubin from the Board could be considered a violation of Dr. Cubin's First Amendment rights, Dr. Cubin has not shown the law

was sufficiently clear that every reasonable official would have understood such action to be a constitutional violation. Governor Gordon is therefore protected by qualified immunity against Dr. Cubin's personal-capacity claims.

5.      **Dr. Cubin's State Law Claim**

Dr. Cubin's Count Three asserts Governor Gordon violated his rights guaranteed by the Wyoming State Constitution. As no federal claims remain, and consistent with U.S. Supreme Court guidance, *see, e.g., Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"), the Court will dismiss without prejudice Dr. Cubin's state law claim.

<u>**CONCLUSION AND ORDER**</u>

Despite Dr. Cubin's interlocutory injunction appeal currently pending before the Tenth Circuit, this Court retains jurisdiction to decide Governor Gordon's 12(c) motion for judgment on the pleadings. Due to the *Ex parte Young* doctrine, the Eleventh Amendment does not bar Dr. Cubin's official-capacity claims against Governor Gordon. Nevertheless, Dr. Cubin's Counts One and Two fail to allege viable First Amendment violations under the *Garcetti/Pickering* test, and they are subject to judgment on the pleadings in Governor Gordon's favor. And even if a First Amendment violation existed, Governor Gordon would be protected from personal liability by qualified immunity. Finally, with the adjudication of Dr. Cubin's two federal claims, the Court will decline to exercise pendent jurisdiction over Dr. Cubin's remaining state law claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment on the Pleadings (ECF 26) is **GRANTED**. Judgment on the pleadings is entered in Defendant's favor and against Plaintiff on Counts One and Two. Count Three is dismissed without prejudice. The Clerk of Court will please enter a general judgment and close this case.

**DATED:** April 14th, 2025.

Scott W. Skavdahl
United States District Judge

**FILED**



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

*3:14 pm, 4/14/25*

**Margaret Botkins**
**Clerk of Court**

DR. FREDERICK WILLIAM "ERIC" CUBIN,
III,

                           Plaintiff,

vs

MARK GORDON, in both his personal and
official capacities as Governor of Wyoming,

                           Defendant.

Case Number: 1:24-CV-00164-SWS

---

## JUDGMENT IN A CIVIL ACTION

Pursuant to the Order entered April 14, 2025 (ECF No. 63), incorporated by reference herein, Defendant's Motion for Judgment on the Pleadings (ECF No. 26) is GRANTED.

IT IS HEREBY ORDERED AND ADJUDGED that judgment on the pleadings is entered in Defendant's favor and against Plaintiff on Counts One and Two, Count Three is dismissed without prejudice, and the case is closed.

Dated this 14th day of April, 2025.

                    Margaret Botkins
                    Clerk of Court

                    By Elayna Thorsell
                    Deputy Clerk

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING
## CHEYENNE DIVISION

| | |
|---|---|
| DR. FREDERICK WILLIAM "ERIC" CUBIN III, | Case No. 1:24-cv-164 |
| *Plaintiff*, | |
| v. | |
| MARK GORDON, in both his personal and official capacities as Governor of Wyoming, | |
| *Defendant.* | |

## NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

Notice is hereby given that Plaintiff Dr. Frederick William "Eric" Cubin III appeals to the United States Court of Appeals for the Tenth Circuit from the following orders, rulings, and judgements of the District Court for the District of Wyoming.

1. *Order Granting Defendant's Motion for Judgment on the Pleadings* [ECF No. 63], dated April 14, 2025, United States District Court Judge Scott W. Skavdahl.

2. *Judgment in favor of Defendant* [ECF No. 64], dated April 14, 2025, United States District Court Judge Scott W. Skavdahl.

3. Any and all orders, rulings, and judgements underlying any of the foregoing.

WYD 39

4. Included herewith is payment of the filing fee and docketing fee as required by 28 U.S.C. § 1913, 28 U.S.C. § 1917, Federal Circuit Rule 52(a)(3)(A), and Rule 3(e) of the Federal Rules of Appellate Procedure.

Dated this 18th day of April 2025.

Plaintiff: Dr. Frederick William "Eric" Cubin III

BY:     /s/ D. Stephen Melchior
        D. Stephen Melchior (WY Bar No. 5-2885)
        Melchior Law Firm, P.C.
        2010 Warren Avenue
        Cheyenne, WY 82001
        (307) 637-2323 - telephone
        steve@melchlaw.com

BY:     /s/ Bridget Conlan
        Bridget Conlan (WY Bar No. 8-7348)
        LIBERTY JUSTICE CENTER
        7500 Rialto Blvd., Suite 1-250
        Austin, TX 78737
        (512) 481-4400 - telephone
        bconlan@libertyjusticecenter.org

        *Attorneys for Plaintiff Dr. Eric Cubin*

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was filed electronically with the Court's

Case Management/Electronic Case Filing (CM/ECF) system. The Court and/or

Clerk of Court may serve and give notice to counsel by CM/ECF electronic

transmission.

Dated this 18th day of April 2025.

/s/ Bridget Conlan
Bridget Conlan (WY Bar No. 8-7348)
LIBERTY JUSTICE CENTER
7500 Rialto Blvd., Suite 1-250
Austin, TX 78737
(512) 481-4400 - telephone
bconlan@libertyjusticecenter.org

*Attorney for Plaintiff Dr. Eric Cubin*